**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**TIMOLIN P. ROBINSON,**

    **PLAINTIFF,**

    v.                                              **CIVIL ACTION NO.: 2:05CV370**

**PVA III, L.P. and**
**PROCACCIANTI GROUP, INC.,**

    **DEFENDANT.**

## ORDER AND OPINION

This matter is before the Court on a Motion for Summary Judgment, filed by PVA III, L.P. and Procaccianti Group, Inc. [hereinafter collectively "Defendants"],[1] in an action brought by Timolin P. Robinson ("Plaintiff") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. Specifically, Plaintiff alleges that she was terminated in retaliation for exercising her civil rights in a Title VII action litigated before this Court in 2001 and 2002 [hereinafter "Plaintiff's Prior Lawsuit"]. Complaint at ¶ 13. For the reasons set forth herein, Defendants' Motion for Summary Judgment is **GRANTED**.

---

[1] In the Complaint, Plaintiff also named two other entities as defendants: HMH Norfolk L.P. and Crestline Hotels and Resorts, Inc. By stipulations, dated November 29, 2005, and February 1, 2006, these entities were voluntarily dismissed from this action.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was previously employed by Crestline Hotels and Resorts, Inc. [hereinafter "Crestline"] as an administrative assistant in the engineering department of the Marriott Waterside Hotel and Resorts [hereinafter "the Hotel"]. Id. at ¶ 6. While employed by Crestline, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination arising from the denial of a promotion within the Hotel. Id. at ¶ 10. Plaintiff's EEOC charge proceeded to civil litigation in this Court in 2001. Id.; Robinson, et al v. HMH Norfolk, L.P., et al, Civil Action No. 2:01cv262. Plaintiff named as defendants her then current employer, Crestline, as well as HMH Norfolk L.P., and Storemont Trice Corporation. Id. Plaintiff's Prior Lawsuit settled in April 2002, and a consent order of dismissal was entered on May 1, 2002. See Defendant's Memorandum in Support of Motion for Summary Judgment, Exh. 2 [hereinafter "Def.'s Mem."], doc. 20. After the lawsuit concluded, Plaintiff continued to be employed by Crestline in the same position.

On July 18, 2003, the Hotel was purchased by the Procaccianti Group, Inc. [hereinafter "the Procaccianti Group"]. Id. at 1. The positions of all Crestline employees were severed on July 17, 2003, pursuant to the purchase, and those employees that the Procaccianti Group chose to retain were asked to fill out a new application for the new company. A subsidiary of the Procaccianti Group, PVA III, L.P., [hereinafter "PVA"], became the new employer of the Hotel employees that were rehired. Id.

Plaintiff and three other Crestline employees were not rehired after the Defendants' takeover of the ownership and operation of the Hotel. Id. at 2; Complaint at ¶ 11. On the afternoon of July 17, 2003, Plaintiff was informed by Denise Reynolds [hereinafter "Ms. Reynolds"], the acting human resources manager for the Hotel, that Plaintiff "was terminated

because [Plaintiff's] position did not exist with the new owners" and that there was no need for her to fill out an application for employment at that time. See Deposition Upon Oral Examination of Timolin P. Robinson, dated March 20, 2006, at 92, 95 [hereinafter "Pl.'s Deposition"], Def.'s Mem., Attachment. On July 18, 2003, Plaintiff went back to the Hotel to speak with one of Defendants' representatives and was informed that Plaintiff "was terminated due to the sell [sic] of the [H]otel," that Defendants "were not going to rehire [Plaintiff] because [her] position did not exist," and that the decision not to rehire Plaintiff was "not personal, but it was a business decision." Pl.'s Deposition at 93, 95-100.

Although Plaintiff was not asked to fill out an application for any other position after the takeover, Plaintiff remained eligible for employment at the Hotel. See Def.'s Mem., Exh. 6, Declaration of Jama Basinger at ¶ 10 [hereinafter "Basinger Decl."]. After the takeover, only one employee remained in the human resources department, and in late July, a position opened for a human resources assistant. Basinger Decl. at ¶ 4, 6. Jama Basinger [hereinafter "Ms. Basinger"], the remaining human resources employee, posted the position internally at the Hotel and in the Virginia Pilot. Id. at ¶ 6. Plaintiff viewed the internal posting and applied for the position on August 18, 2003. Id. at ¶ 8. Ms. Basinger did not select Plaintiff for the position. Id. at ¶ 9.

On November 5, 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging a claim for retaliatory discharge. The EEOC dismissed Plaintiff's charge. Complaint at ¶ 14(b). On June 16, 2005, Plaintiff filed the instant Complaint, pro se, alleging a claim of retaliatory discharge, arising from Defendants' actions pursuant to their takeover of the Hotel.[2] Complaint at ¶ 13. On September 22, 2005,

---

[2]In the Complaint, Plaintiff also alleged that she was denied "a promotion to Guest Relations Manger [sic], a position for which Plaintiff was qualified and filed an application in a timely manner . . . solely on account of her race[.]" Complaint at ¶ 9. It appears that this claim was the subject of Plaintiff's Prior Lawsuit, which was fully litigated before this Court and was dismissed with prejudice in May 2002, pursuant to a settlement and consent order

counsel entered this action on behalf of Plaintiff. On March 20, 2006, Plaintiff was deposed by the Defendants, and on May 26, 2006, Defendants filed the instant Motion for Summary Judgment. (Doc. 19.) On June 20, 2006, Plaintiff filed her Response to Defendants' Motion [hereinafter "Pl.'s Resp."], and Defendants made no reply.[3] (Doc. 22.)

## II. STANDARD OF REVIEW

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986). The facts and inferences drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995). If the Plaintiff and Defendants dispute the facts of the case, "plaintiff's version of the facts must be presented where the parties' versions conflict, at least to the degree that [her] allegations have support in affidavits, depositions or other documentary evidence." Magnuson v. Peak Technical Servs., 808 F. Supp. 500, 504 (E.D. Va. 1992) (citations omitted).

In order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in the pleadings."

---

of dismissal. See Complaint at ¶ 10. Apparently, Plaintiff's assertion of racial discrimination was stated in the Complaint as factual background for her instant claims. Furthermore, in Plaintiff's deposition, she acknowledged that she is making no claim of racial discrimination in the instant action, and she did not pursue any such claim in her briefing for this Motion. See Pl.'s Deposition at 56.

[3]Plaintiff's response was filed fifteen (15) days after her deadline to respond on June 5, 2006.

Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. Celotex, 477 U.S. at 324. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue, "there is 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322; Anderson, 477 U.S. at 254.

### III. DISCUSSION

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to [] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). No direct evidence exists to support Plaintiff's allegations; thus, in order to establish a Title VII violation based upon circumstantial evidence, Plaintiff's evidence must establish that Defendants engaged in intentional discrimination according to a three-step, burden-shifting method as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). Under the McDonnell Douglas-Burdine framework, Plaintiff must first establish a prima facie case of retaliatory discharge. Burdine, 450 U.S. at 256; see also Dowe v. Total Action Against Poverty, 145 F.3d 653, 656 (4th Cir. 1998). If Plaintiff is successful in establishing a prima facie case, the burden of production, but not proof, shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the action. McDonnell Douglas, 411 U.S. at 802. If the employer is capable of articulating such, the burden shifts back to Plaintiff to prove that "that

the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253.

In this action, Plaintiff claims that Defendants' decision to eliminate Plaintiff's position upon their takeover of the Hotel was unlawful retaliation in response to Plaintiff's Prior Lawsuit against Crestline, HMH Norfolk L.P., and Storemont Trice Corporation. Complaint at ¶ 13. Plaintiff also complains about the Defendants' failure to offer her, or select her for, any other position after the takeover. See Complaint at ¶12; Pl.'s Deposition at 148-54.

**A. Defendants' Termination of Plaintiff's Position**

To establish a prima facie claim of retaliatory discharge, Plaintiff must show that 1) she engaged in a prior protected activity; 2) that she was discharged; and that 3) a causal connection existed between the prior protected activity and the discharge. Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). There is no dispute that Plaintiff will be able to demonstrate the first two prongs of the prima facie case. Plaintiff engaged in a prior protected activity pursuant to Plaintiff's Prior Lawsuit, and Defendants acknowledge that Plaintiff was terminated upon Defendants' takeover of the Hotel. Def.'s Mem. at 2.

The dispute in this case involves whether a causal connection exists between Plaintiff's Prior Lawsuit and her termination. In order to establish the causation element, Plaintiff must show that Defendants had knowledge of Plaintiff's Prior Lawsuit when the decision to eliminate her position was made. Dowe, 145 F.3d at 657 ("[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). In this case, Plaintiff has not alleged any facts to demonstrate the knowledge requirement, nor has Plaintiff offered any facts or evidence to rebut Defendants' claim, supported by sworn affidavits and documentary evidence, that the individuals who made the decision to

eliminate Plaintiff's position had no knowledge of Plaintiff's Prior Lawsuit. As a result, Plaintiff's claim of retaliatory discharge must fail in light of a complete failure of proof on the essential causal connection element. Id.; Causey, 162 F. 3d. at 803.

Defendants submitted the sworn declaration of Betty Procaccianti [hereinafter "Ms. Procaccianti"], Chief Operating Officer of the Procaccianti Group, to explain why the Defendants decided not to hire Plaintiff and three other individuals when they purchased the Hotel and assumed operation of it. See Def.'s Mem., Exh. 1, Declaration of Betty Procaccianti [hereinafter "Proc. Decl."]. According to Ms. Procaccianti, prior to the purchase of the Hotel on July 17, 2003, she discussed the details of the post-acquisition staffing of the Hotel with Christopher Sheldon [hereinafter "Mr. Sheldon"], the Procaccianti Group's regional director.[4] Id. at ¶ 4, 5. Mr. Sheldon and Ms. Procaccianti decided to make four staffing changes, which affected the jobs of four individuals, including Plaintiff:

- We decided not to extend an offer of employment to the general manager then in charge of the [H]otel, Steve Keup, [hereinafter "Mr. Keup"] as we felt his salary was too high, given the size of this [H]otel.
- Similarly, based on salary, we also decided not to extend an offer of employment to Michael West, the director of convention services.
- We eliminated the position of director of security. Mr. Sheldon and I concluded that this [H]otel, given its size, did not require a head of security at a director level, and that a "supervisor"-level employee would suffice.
- Finally, Mr. Sheldon and I decided that this [H]otel, given its size, did not warrant an administrative assistant in the engineering department. At none of our other [H]otels (at that time, approximately 20) did we have an employee in an "administrative assistant" position in the engineering department.

---

[4] Mr. Sheldon is no longer employed by the Procaccianti Group. Proc. Decl. at ¶ 4.

Id. at ¶ 8.

In her declaration, Ms. Procaccianti further averred that 1) no individuals from inside or outside of the company, other than herself and Mr. Sheldon, participated in making these employment decisions; 2) pursuant to Section 11.2.1 of the Purchase-Sale Agreement of the Hotel, the Procaccianti Group was never provided copies of personnel files; 3) the only document the Procaccianti Group had in making the decision was an employee census, dated October 16, 2002, which lists the name of each employee, their job title, compensation, relevant dates of hire and review dates, social security numbers (redacted), and full time/part time status; 4) neither Ms. Procaccianti nor Mr. Sheldon had any knowledge that Plaintiff had previously filed a lawsuit against the previous owners of the Hotel and the Hotel's prior management company; and 5) no lawsuit involving Plaintiff was listed in the Section 3.5 of the Purchase-Sale Agreement, which set forth all pending legal actions. Id. at ¶¶ 5-7, 9-10, Exhs. A-C. Finally, Ms. Procaccianti stated that the decision to eliminate Plaintiff's position "was based solely on the economics of the [H]otel" and "had nothing to do with a lawsuit about which we had no knowledge[.]" Id. at ¶ 11.

Defendants also submitted the declaration of Lisa Hugo [hereinafter "Ms. Hugo"], the Procaccianti Group's vice president for human resources, whose job it was to collect all available information about the Hotel and its employees prior to the purchase of the Hotel. See Def.'s Mem., Exh. 3, Declaration of Lisa Hugo [hereinafter "Hugo Decl."]. Ms. Hugo averred that

> [a]t no time during my work on the acquisition of the [Hotel] was I made aware of the prior lawsuit against Crestline filed by [Plaintiff]. I did not become aware that such a suit had been filed until I became aware of the present lawsuit, and read the allegations concerning the *prior* lawsuit in [Plaintiff's] complaint.

Id. at ¶ 8.

Plaintiff disputes Defendants claim, supported by sworn affidavits, that Ms. Procaccianti and Mr. Sheldon were the sole decision-makers regarding Plaintiff's termination, and that none of Defendants' representatives, including Ms. Procaccianti and Mr. Sheldon, had any knowledge of Plaintiff's Prior Lawsuit when the decision to eliminate Plaintiff's position was made. Pl.'s Resp. at ¶ A-C. During her deposition, Plaintiff stated that she "feel[s] this whole prior lawsuit has everything to with this [lawsuit]" and that she "believes" that the Defendants retaliated against her for having filed the previous lawsuit against her previous employers. Pl.'s Deposition at 55.

In support, Plaintiff stated that she "believe[s] Steve Keup shared this information [regarding Plaintiff's Prior Lawsuit] with Procaccianti" because "he thought his job was secure with the company." Id. at 102-03. However, Plaintiff admitted during her deposition that she had no knowledge that Mr. Keup informed Defendants about Plaintiff's Prior Lawsuit; rather, she merely speculated that he did.[5] Id. at 110-11. She also acknowledged that the extent of her knowledge that Mr. Keup believed his job was secure was based solely upon her perception that all of the Hotel employees shared the same belief regarding their job security.[6] Id. at 105-06.

As an alternative means of establishing the knowledge requirement, Plaintiff suggested that her supervisor, Dave Phillips [hereinafter "Mr. Phillips"], "could have discussed [Plaintiff's Prior Lawsuit] as an Executive Committee Member." Id. at 111. Defendants submitted Mr.

---

[5] Q: You only have a suspicion that Mr. Keup informed Procaccianti about your previous lawsuit. You have no knowledge of that fact. Isn't that true?
　A: That Mr. Keup himself – no, I have no knowledge of that.
Pl.'s Deposition at 110-11.

[6] Q: . . . . What knowledge do you have of Steve Keup thinking that his job was secure with Procaccianti?
　A: Just the knowledge that we all thought our job was secure because pretty much everyone was.
　Q: So you had no special knowledge about Mr. Keup's feelings of security or insecurity one way or the other; is that correct?
　A: Correct.
Pl.'s Deposition at 105-06.

Phillips' declaration, in which he averred that he "played no role whatsoever in the decision to eliminate [Plaintiff's] position" and that he had not discussed with anyone "concerning the fact that [Plaintiff] has previously filed a lawsuit against Crestline and the [H]otel." See Def.'s Mem., Exh. 4, Declaration of Dave Phillips [hereinafter "Phillips Decl."], at ¶¶ 6, 8. Moreover, Plaintiff acknowledged during her deposition that she had no knowledge that Mr. Phillips had actually communicated any information involving Plaintiff to Defendants. Id. at 111. The sum and substance of her claim is that he could have done so. Id. Thus, Plaintiff relies on pure speculation that Mr. Keup or Mr. Phillips may have informed Defendants of Plaintiff's Prior Lawsuit. She offers no specific facts indicating the existence of such knowledge, and offers no evidence through affidavits, interrogatories, or otherwise, to rebut Defendants' evidence that Mr. Keup or Mr. Phillips shared no information about Plaintiff with Defendants.

Plaintiff suggested one final way that Defendants could have gained knowledge of Plaintiff's Prior Lawsuit prior to their decision to eliminate her position. Plaintiff alleged that documents concerning her lawsuit could have been transferred to Defendants, based upon a letter written by a former human resources clerk, Anna Castillo-Lora [hereinafter "Ms. Castillo-Lora"]. See Def.'s Mem., Ex. 5, Ms. Castillo-Lora's Letter, dated December 30, 2003. Plaintiff contends that the letter "indicates that certain information was copied from employee files and boxed to be forwarded *to Defendants*." Pl.'s Resp. at ¶ B (emphasis added). Plaintiff's claim is undermined by the very letter that she relies upon, which reads as follows, in relevant part:

> In preparing for [Defendant's takeover,] the Human Resources office made copies of all current associate records. Only essential documents were copied: leave request[s], last two performance appraisal[s], performance reprimands & associate contact information. This information was copied so that some of the associate information could be transferred to the new files under the new owners Procaccianti. I was told that once the Hotel was sold all the original

files would need to be boxed and send [sic] *to Crestline Corp.*

Def.'s Mem., Exh. 5 (emphasis added).

In her declaration, Ms. Basinger explained that she also participated in the task of copying certain documents at the direction of the acting human resources director Jane Whitman [hereinafter "Ms. Whitman"]. Ms. Basinger stated that "in December 2002, Ms. Basinger and Ms. Castillo-Lora "made copies of certain critical documents from the personal files." Basinger Decl. at ¶ 15.

> As Ms. Castillo-Lora describes . . . , we did this in view of our knowledge that the [H]otel was in the process of being sold . . . . We were aware that the originals of the personnel files would be boxed up and sent to Crestline's corporate headquarters. Ms. Whitman . . . instructed Ms. Castillo-Lora and I to copy the files so that we would have a continuity of records.

Id.

Ms. Basinger also averred the following regarding the existence of these records after they were copied:

> [D]uring the days leading up to Procaccianti's July 18, 2003 takeover of the [H]otel, I was the only employee in the human resources department.[7] Crestline dispatched the human resources manager of a nearby [H]otel managed by Crestline, Denise Reynolds, who spent several days in my [H]otel during this period. Ms. Reynolds boxed up and sent the original personnel files to Crestline's corporate headquarters prior to the July 18 takeover.
>
> In addition, Ms. Reynolds discovered the existence of the copied personnel files. She had them shredded and destroyed prior to the acquisition of the [H]otel by [t]he Procaccianti Group.

Id. at ¶¶ 16, 17.

---

[7]Prior to the takeover, Ms. Whitman and Ms. Castillo-Lora left the company. See Def.'s Mem. at 9; Basinger Decl. at ¶ 4.

Contrary to the language of Ms. Castillo-Lora's letter and Ms. Basinger's declaration, Plaintiff asserts that "[i]t is anticipated that upon further examination, Ms. Castillo-Lora will further verify [that Plaintiff's] employee records, including information concerning [Plaintiff's Prior Lawsuit], [were] among the items that [were] copied and boxed with the intent that they be forwarded to Defendants." Pl.'s Resp. at ¶ C. However, Plaintiff did not produce the testimony of Ms. Castillo-Lora, and at oral argument, conceded that Plaintiff could not provide any evidence, through the testimony of Ms. Castillo-Lora or otherwise, to show that the copied files were delivered to Defendants' at any time. Thus, Plaintiff has not offered any facts or evidence to rebut Defendants' evidence that the copied employee files were shredded before the takeover.

In this case, there is a total absence of proof concerning the essential causation element of Plaintiff's claim of retaliatory discharge. Plaintiff relies solely upon mere speculation and conjecture to support her belief that Defendants could have gained knowledge of Plaintiff's Prior Lawsuit when the decision to eliminate her position was made. This is clearly insufficient to defeat summary judgment. Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)); Lettieri v. Equant, Inc., 367 F. Supp. 2d 958, 963 (E.D. Va. 2005) ("Unsupported speculation is not enough to withstand a motion for summary judgment.") (citing Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)). Thus, Plaintiff has failed to sustain a genuine issue of material fact on the prima facie elements of retaliatory discharge.

**B. Defendants' Failure to Hire Plaintiff**

Any failure-to-hire claim predicated upon Defendants' failure to hire Plaintiff for the human resources assistant position, or their failure to offer her any other positions after

Defendants' takeover of the Hotel, must also fail to survive summary judgment. Id. In order to establish a prima facie case of discriminatory failure-to-hire under Title VII, Plaintiff "must prove that: (1) [she] is a member of a protected group; (2) [she] applied for the position in question; (3) [she] was qualified for the position; and (4) [she] was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998).

As previously noted, Ms. Basinger was the sole remaining employee at the time of the takeover. Basinger Decl. at ¶ 4. Approximately one week after the takeover, Ms. Basinger applied for, and was awarded, the position to head the Hotel's human resources department and was given authority to hire an assistant. Ms. Basinger "internally posted the opening" and "ran an ad in the Virginia Pilot newspaper" on August 3, 2003. Id. at ¶ 6. Plaintiff applied for the position on August 18, 2003. Pl.'s Deposition at 44-45. Ms. Basinger stated that she "received many applications and resumes from qualified candidates, including candidates with human resources experience and with college training and degrees" and that she gave Plaintiff's application "due consideration." Id. at ¶¶ 7, 11.

> I did not receive an application from [Plaintiff] until very late in the application period . . . .
>
> Prior to receiving [Plaintiff's] application, I had narrowed the selection in my mind to a small handful of very qualified candidates, including David Mitchell, who at that point had been employed in the [H]otel for seven years as a restaurant supervisor. I selected Mr. Mitchell for this position primarily because of his supervisory experience in the restaurant. I felt his restaurant experience would be very helpful in screening, interviewing and selecting potential candidates for a variety of food and beverage positions.

Id. at ¶¶ 8, 9. Ms. Basinger further averred that at "the point in time that I selected Mr. Mitchell for the human resources assistant position . . . I was completely unaware that [Plaintiff] had

previously filed a lawsuit against the [H]otel. I did not learn of the previous lawsuit until October of 2003, when I read the charge of discrimination in <u>this</u> lawsuit." <u>Id.</u> at ¶ 13.

Plaintiff offered no facts or evidence to rebut Ms. Basinger's testimony. Furthermore, Plaintiff alleged no fact which would raise an inference that Ms. Basinger's decision to select someone else for the human resources assistant position was made with a discriminatory purpose or indicating that Plaintiff was even qualified for the position. Finally, the human resources position was the only position that Plaintiff applied for; thus, any failure-to-hire claim predicated upon Defendants' failure to offer Plaintiff other positions must also fail. Accordingly, Plaintiff has failed to sustain a genuine issue of material fact with respect to any failure-to-hire claim.

## V. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment, and **DISMISSES** this action.

The Clerk is **REQUESTED** to send a copy of this Order and Opinion to Plaintiff and all counsel of record.

It is so **ORDERED**.

/s/
HENRY COKE MORGAN, JR.
*SENIOR UNITED STATES DISTRICT JUDGE*

Norfolk, Virginia
July 20, 2006